## Long et ux. v. Commonwealth

*Wallace M. Keely* and *Kirke Bryan*, for plaintiffs.

*Paul P. Wisler*, for Commonwealth.

KNIGHT, P. J., February 2, 1940.—Plaintiffs are the owners of certain premises fronting on route 197, being the Skippack Turnpike, in the Township of Whitpain, Montgomery County.

In 1938, the Governor of Pennsylvania approved a plan for widening and improving said route 197. The plan showed that from four to five feet of land would be appropriated and taken, along the front of plaintiffs' property.

Plaintiffs and the Commonwealth were unable to agree as to the amount of damages to be awarded plaintiffs for the taking, whereupon a petition was presented to the court of quarter sessions for the appointment of a jury of view, to view the premises and assess the damages. The jury of view, after viewing the premises and hearing testimony, fixed the damages to be awarded to plaintiffs, in the sum of $5,750.

After this award, the Commonwealth appealed, and it was agreed in writing that the case should be tried by a judge without a jury.

Subsequent to the award of the jury of view, the Governor of Pennsylvania on May 8, 1939, approved a revised plan, according to which no land of plaintiffs was appropriated. Plaintiffs make no complaint as to the substitution of the revised plan, provided none of their land is taken and provided further that the Commonwealth will reimburse plaintiffs for all proper and legal expenses incident to the proceedings before the jury of view.

It was stipulated that the present inquiry be confined to a determination of what would be the legal and proper expenses of plaintiffs.

*Findings of fact*

1. The revised plan does not appropriate or take any land of plaintiffs.

2. In preparing their claim against the Commonwealth to be presented before the jury of view, plaintiffs incurred the following expenses: Bussa Studio, for photographs, $20; Will D. Hiltner, survey, plan, and testifying before the jury of view, $55; these are proper and necessary expenses incurred.

3. At the entrance of the driveway into plaintiffs' home, there were in 1938 two wing walls, beginning in the right of way, and extending into plaintiffs' property.

4. There was in 1938 a walk leading from the front door of plaintiffs' property to the side of the road. Along a portion of this walk, namely, that portion nearest to the road, there was a wall on each side. This wall began in the right of way and extended into plaintiffs' property.

5. Under the original plan, the greater portion of these walls would lie within the right of way, as shown by said plan.

6. Plaintiffs were notified by the engineer in charge of the project for the Commonwealth of Pennsylvania that the walls would have to be removed. The said engineer notified plaintiffs that the Commonwealth would replace retaining walls to protect certain trees standing upon plaintiffs' property.

7. Plaintiffs were not satisfied with the plan proposed by the engineer for the Commonwealth of Pennsylvania, in that the foundation for the new walls was shown as one foot below the level of the ground, whereas plaintiffs desired it to be three feet below the level of the ground.

8. The Commonwealth also proposed to make the new wall one foot in thickness, whereas plaintiffs contended that the wall should be 18 inches in thickness.

9. James J. Skelly Company was the general contractor for rebuilding of route 197, and plaintiffs agreed with the James J. Skelly Company that the latter should take down the walls and replace them with new walls. This the said James J. Skelly Company did. A portion of the cost of taking down and replacing the said walls was paid by the Commonwealth of Pennsylvania as provided for in the general contract between the Commonwealth and James J. Skelly Company. In order to complete the walls with an excavation of three feet, and the wall of 18 inches, it required 21½ cubic yards at $14, or $301, and 26 cubic yards at $1.50, or $39, a grand total of $340. This amount was paid by plaintiffs.

10. It is impossible to tell from the evidence just what portion of the walls taken down and replaced was in the original right of way and what portion of it was in the property of plaintiffs.

11. The changes in the walls were made necessary by the proposed widening and relocation of route 197 in front of the property of plaintiffs.

12. Plaintiffs retained and consulted Clayton L. Brown, a real estate expert, who examined the property of plaintiffs, consulted with counsel for plaintiffs in the preparation of the claim against the Commonwealth, and testified before the jury of view. For this service he has charged plaintiffs the sum of $100, which we find to be a just, reasonable, proper, and necessary charge for the services rendered.

13. Plaintiffs also secured the services of Reynolds Linderman, a real estate expert, who examined the property and consulted with counsel for plaintiffs. Before the hearing held by the jury of view, Mr. Linderman died, and his estate has made a charge of $50 against plaintiffs for the services rendered by Mr. Linderman as a real estate expert. We find this is a just, reasonable, proper, and necessary charge.

14. After the death of Mr. Linderman, plaintiffs engaged, as a real estate expert, Lyman A. Kratz, who examined the property, consulted with counsel for plaintiffs, and testified before the jury of view. Mr. Kratz has made a charge of $50 for his services, and we find this to be a just, reasonable, proper, and necessary charge.

15. By reason of the proposed taking by the Commonwealth of a portion of plaintiffs' property, plaintiffs retained Wallace M. Keely to advise them and to represent them in presenting their claim for compensation in the way of damages before the jury of view. Mr. Keely prepared the case and conducted the hearing before the jury of view. He has made a charge of $250 for his professional services and this we also find to be a just, reasonable, proper, and necessary charge.

*Discussion*

The Commonwealth in this case relocated the road in question, so that there was no taking of plaintiffs' property. The relocation took place after a jury of view had awarded $5,750 damages to plaintiffs, and while an appeal from this award was pending in this court. Plaintiffs do not contend that the damages awarded them were due and owing by the Commonwealth despite the relocation of the road, and hence it is unnecessary for us to discuss this angle of the case.

In the case of Reinbold v. Commonwealth, 319 Pa. 33 (1935), the Commonwealth sought to discontinue certain condemnation proceedings, after an award of damages by a jury of view, and after a verdict against the Commonwealth had been rendered in the common pleas court, but while a motion for a new trial was pending. The Supreme Court, after a thorough discussion of the whole subject by Mr. Justice Simpson, held that the Commonwealth had a right to discontinue the proceedings, and directed the court below by appropriate proceedings to ascertain the amount of costs, expenses, and damages expended by the landowner by reason of the intended condemnation of his land, and to direct the payment of such expenses and damages within such time as might be reasonable under the circumstances, the time to be designated in the decree: see page 46 of the opinion in Reinbold v. Commonwealth, supra.

Since plaintiffs have abandoned their claim for damages for the property proposed to be taken under the original plan, it was agreed by counsel in open court that the present trial should be confined to an inquiry as to the costs and expenses suffered by plaintiffs by reason of the intended taking of a portion of their property. We are of the opinion that this is an appropriate proceeding to ascertain these costs and expenses.

As to the costs, little need be said; our decision, equivalent to the verdict of a jury, will carry the costs with it.

In considering the expenses, there is no difficulty about the items having to do with the preparation of plans, taking of pictures, and the securing of expert witnesses to testify before the jury of view. These expenses were made necessary by the action of the Commonwealth; the services were actually rendered and the charges therefor were reasonable and proper. There are, however, two items of expense about which there is considerable doubt, namely, the cost of rebuilding the wall, and Mr. Keely's counsel fee.

There is no doubt that plaintiffs' wall was torn down at the request of the State Highway Department, and that a portion of this wall was not within the legal limits of the road, as those limits existed before the intended taking. The greater portion of the wall encroached upon the legal right of way, and the new wall that was built at the joint expense of plaintiffs and the Commonwealth also encroaches upon the highway for much of its length.

We do not see how the Commonwealth can be charged with the cost of removing an encroachment on the legal right of way. No prescriptive right to maintain the wall in its former location is claimed or proved. No doubt some of the wall torn down and replaced was within the confines of plaintiffs' property, but the evidence is bare of anything which would show just what portion of the wall was within and what without the legal limits of the right of way.

We are therefore of the opinion that no allowance may be made to plaintiffs for the item of the wall. This is not too great a hardship to plaintiffs, for they have a new, longer, and better wall, built partly at the expense of the public.

We now come to the question of counsel fee. No one complains of the amount, which is indeed moderate. It is also obvious that it was necessary for plaintiffs to employ legal counsel. They did not go to law; the law came to them. The proper preparation of a claim for damages before a jury of view, and afterwards upon appeal to the

court of common pleas, is a task beyond the ability of a layman to perform. Can we allow these counsel fees? It is plain that they cannot be allowed as part of the costs of the case. "There is no law in Pennsylvania to warrant the payment as 'costs in the cause', of the fees of counsel for professional services . . .": Winton's Appeal, 87 Pa. 77, 84 (1878), cited with approval in Kaufmann v. Kirker, 22 Pa. Superior Ct. 201 (1903).

The Supreme Court, in the Reinbold case, supra, held that the Commonwealth, in cases where the condemnation proceedings were abandoned, was liable not only for the costs but for necessary expenses of the landowner as well. May the counsel fee of Mr. Keely be considered a necessary expense for which the Commonwealth is liable?

It is generally held that a municipal corporation, in the absence of a statute, incurs no liability, in abandoning eminent domain proceedings which it has instituted, for counsel fees and other disbursements which the property owner has had to pay on account of such proceedings: Note (1924) 31 A. L. R. 352, and cases cited therein.

In Pennsylvania there is no statute allowing the landowner counsel fees and expenses in cases such as this, but we have the direction of our highest tribunal that in such cases the landowner is to be paid his costs, expenses, and damages.

When we study the decided cases in this State on the question before us, we find some confusion. In Smith's Estate, 17 Erie 152 (1934), it is said that "Counsel fees are chargeable in Pennsylvania to the attorney for the opposite party only when and where expressly stipulated for." This was an orphans' court matter, in which counsel for a creditor of the estate sought to charge the estate with a fee for collecting a claim held by his client as collateral for a debt of the estate.

Allen v. Williamsport National Bank, 36 Pa. Superior Ct. 73 (1908), involved a note in which the obligors agreed that upon nonperformance of certain conditions

the collateral security for the note could be sold for the payment of the note and all necessary expenses and charges. Attorney fees were not allowed as a necessary expense. DeCoursey v. Johnston, 134 Pa. 328 (1890), was based on similar facts, and in the opinion, at page 333, we find it stated: "Moreover, counsel fees are allowable, in this state, to the attorney of the opposite party, only when expressly stipulated for." These cases show how closely Pennsylvania has adhered to the common rule that each party must pay for the services of his attorney.

An exception seems to have been made in cases such as the one at bar. The first case we can find on the subject is Moravian Seminary v. Bethlehem Borough, 153 Pa. 583 (1893). There the municipality sought to discontinue condemnation proceedings after a verdict for damages was rendered. A master was appointed, who reported to the lower court that the costs amounted to $745, and the landowner's expenses, including counsel fees, was $2,242.75. The lower court allowed the costs, but struck out the expense items. The Supreme Court reversed and allowed the collection of the expenses including counsel fees from the municipality.

Huckestein v. Allegheny City, 165 Pa. 367, was decided by the Supreme Court in 1895. In that case an ordinance was passed changing the grade of a street, under the erroneous assumption that the street had been legally opened. The Supreme Court held that the ordinance gave the landowner no right of action, and that the city should have the right to discontinue the proceedings, to assess damages, provided that the landowner be paid for his costs, counsel fees and expenses. The order of the court, at page 372, reads:

"The judgment appealed from is reversed and the record remitted that the court may fix an allowance for counsel fees for the plaintiff and tax the costs."

In Sensenig's Use v. City and County of Lancaster, 22 Lanc. 121 (1898), it was held that no recovery could be had for damages sustained by reason of the opening of

a city street where said street was vacated by the city after view and appeal, but that the landowner was entitled to recover his costs and expenses including counsel fees. The judgment in this case was affirmed by the Superior Court (Sensenig v. Lancaster County, 30 Pa. Superior Ct. 224 (1906)), without discussing the item of counsel fees.

.The last word we have been able to find on the question is contained in the opinion in Schmitt v. City of Phila., 248 Pa. 124 (1915). In this case while an appeal was pending, after an award by a jury of view, the city repealed the ordinance condemning the land. The landowner then presented a petition for allowance of costs, counsel fees, and expenses. Before the master appointed, the only claim made was for counsel fees of $1,650. A final decree having been entered against the city, an appeal was taken to the Supreme Court. That tribunal reversed for procedural errors. As to the counsel fee, the court, at page 126, said:

"Whether the city in any event is liable to the plaintiff for money expended by him for services for counsel, is a matter aside from our present inquiry, and as to which we make no expression of opinion. When that question comes properly before us we will meet it."

While this pronouncement may cast a suspicion of doubt upon the right of the landowner to collect counsel fees in cases such as this, it does not expressly or by implication overrule the earlier decisions of our appellate courts.

We have come to the conclusion, then, that while the general rule is that counsel fees may not be collected from the opposing party in the absence of a statute or an express agreement to pay them, an exception has been made by the courts of Pennsylvania in those cases in which condemnation proceedings have been discontinued or abandoned. Plaintiffs, therefore, are entitled to recover from defendant, the following items: Will D. Hiltner, preparing plan and testifying, $55; Bussa's Studio, photographs, $20; Lyman A. Kratz, expert witness, $50;

Reynolds D. Linderman, expert witness, $50; Clayton L. Brown, expert witness, $100; Wallace M. Keely, counsel fee, $250; or a total of $525.

### Decree

And now, February 2, 1940, the court finds for plaintiffs and against defendant, in the sum of $525.

The prothonotary will give notice forthwith to the parties, or their attorneys, and, if no exceptions are filed within 30 days after service of such notice, judgment shall be entered by the prothonotary for plaintiffs and against the defendant, for the sum of $525.